UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WORLD WRESTLING | § | CIVIL ACTION NO. |
| ENTERTAINMENT, INC., | § | 3:03-CV-1568 (DJS) |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| AUSBERT DE ARCE, a/k/a GONZALEZ- | § | |
| DEARCE, A., A. GONZALEZ DE ARCE, | § | |
| AUSBERTO ANGEL GONZALEZ, | § | |
| AUSBERT A. GONZALEZ DE ARCE, | § | |
| AUSBERTO GONZALEZ DEARCE; | § | |
| LICENSING WORKS | § | |
| INTERNATIONAL, INC.; and | § | |
| EURODALMER, S.A., | § | |
| | § | |
| Defendants. | § | MARCH 28, 2005 |

## RICO CASE STATEMENT

Pursuant to this Court's Standing Order in Civil RICO cases, Plaintiff World Wrestling Entertainment, Inc. ("WWE") respectfully submits this RICO Case Statement.

1.   *The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. § 1962(a), (b), (c) and/or (d).*

WWE's Second Amended Complaint in this action sets forth in detail the unlawful conduct alleged to be in violation of 18 U.S.C. § 1962(c), as well as in violation of 18 U.S.C. § 1962(d) for conspiracy to violate § 1962(c). In that regard, WWE generally refers the Court to its Second Amended Complaint in this action. There are no claims for violation of 18 U.S.C. § 1962(a) or (b).

Briefly, Defendants Ausbert de Arce ("Gonzalez"), Licensing Works International, Inc. ("LWI") and Eurodalmer S.A. ("Eurodalmer"), individually and in conspiracy with Blue Belt Trading Co. ("Blue Belt"), a Kuwait corporation, and Adnan Ahmed Ali Ezrique ("Ezrique"), Blue Belt's principal, have injured WWE's business and property through a pattern of

racketeering activity involving, among other things, (i) Gonzalez's falsification of contracts purporting to grant Blue Belt and Ezrique WWE licensing rights not authorized by WWE; (ii) Gonzalez's solicitation and receipt of payments from Blue Belt and/or Ezrique, without the knowledge of WWE, in connection with the falsified contracts; (iii) Gonzalez's misrepresentations designed to deceive and coerce Middle Eastern governments and local businesses not to do business with WWE and its duly authorized agents purportedly based on Gonzalez's falsified contracts; and (iv) Ezrique and/or Blue Belt's ongoing unauthorized production and distribution of WWE home video products in reliance on Gonzalez's falsified contracts.

2.      *The identity of each defendant and the alleged misconduct and basis of liability of each defendant.*

(1) Defendant Gonzalez;

(2) Defendant LWI;

(3) Defendant Eurodalmer.

Each Defendant participated in the conduct described in Paragraph 1 above through the predicate acts of racketeering activity described in detail in Paragraph 5 below.

3.      *The identity of the alleged wrongdoers, other than the defendants listed in response to Paragraph 2, and the alleged misconduct of each wrongdoer.*

In addition to the Defendants listed in Paragraph 2, Ezrique and Blue Belt are wrongdoers in the facts and circumstances at issue based upon the conduct described in Paragraph 1 above. As a result of such unlawful conduct, WWE previously sued Ezrique and Blue Belt in this Court in an action styled *World Wrestling Entertainment, Inc. v. Blue Belt Trading Co. and Adnan Ahmed Ali Ezrique,* 3:03 CV 0271 (GLG).  On or about September 17, 2003, this Court issued a judgment by default against Ezrique and Blue Belt which, among other things, (i) awarded WWE damages in the amount of $1,722,216.85, and (ii) issued a permanent injunction that enjoined Ezrique and Blue Belt from, *inter alia,* "representing to any third-party, including the Ministries of Information of all Middle Eastern countries and WWE's business partners in the Middle East,

that Defendants are authorized to sell or distribute WWE home videos or that Defendants continue to act as WWE's duly authorized agent in any capacity."

4.   *The identity of the alleged victims and the manner in which each victim was allegedly injured.*

As a direct and proximate result of Defendants' unlawful conduct, WWE has suffered injury to its business and property, including by, *inter alia,* (i) loss of control over its valuable licensing rights; (ii) lost revenues from the sale of WWE home videos in the Middle East; (iii) loss of various third-party business relationships; (iv) substantial litigation expenses necessitated to attempt to enforce WWE's legal rights; and (v) injury to its business, reputation and goodwill.

As a further direct and proximate result of the Defendants' unlawful conduct, Sanjay Video, WWE's duly authorized home video licensee in the Middle East, has been injured by its inability to sell WWE home video products in various countries of the Middle East.

5.   *A description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim, which shall include the following information:*

a.   *The alleged predicate acts and the specific statutes which were allegedly violated;*

b.   *The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;*

c.   *If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified;*

d.   *Whether there has been a criminal conviction for violation of the predicate acts;*

e.   *Whether civil litigation has resulted in a judgment in regard to the predicate acts;*

f.      *The manner in which the predicate acts form a "pattern of racketeering activity"; and*

g.      *Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan.*

**(a, b and c)**      The Defendants conducted, engaged in and/or participated in a pattern of predicate acts through the enterprise or enterprises described above, including the commission of numerous violations of the Federal Mail Fraud Statute, 18 U.S.C § 1341; the Federal Wire Fraud Statute, 18 U.S.C. 1343; the Federal Money Laundering Statutes, 18 U.S.C. §§ 1956 and 1957; the National Stolen Property Act, 18 U.S.C. §§ 2318 and 2320; the Federal Obstruction of Justice Statute, 18 U.S.C. § 1503; and The Travel Act, 18 U.S.C. § 1952.  Such violations are "predicate acts" under 18 U.S.C. § 1961(1)(B).

Specifically, the Defendants' predicate acts include, but are not limited to, the following:

a.  In furtherance of a scheme or artifice to defraud, and with specific intent to defraud, the Defendants knowingly used or caused to be used the mails or wire communications in violation of 18 U.S.C. § 1341 and/or 18 U.S.C. § 1343, to defraud WWE of its valuable licensing rights by soliciting and/or receiving payments in exchange for creating and providing fraudulent contracts purporting to grant WWE licensing rights to Ezrique and Blue Belt—rights which Gonzalez was not legally able to grant.  The Defendants' specific acts of mail and/or wire fraud include at least the following:

(i)      In furtherance of a scheme to defraud, and with specific intent to defraud, on September 27, 1997, Gonzalez transmitted by facsimile bank account information for an account in the name of Eurodalmer SA on which Gonzalez was a signatory, located at the Banco Bilbao Vizcaya in Miami to Ezrique and/or Blue Belt;

(ii)      In furtherance of a scheme to defraud, and with specific intent to defraud, on November 22, 1996, Ezrique and/or Blue Belt wire-transferred $14,000 to Gonzalez at the Eurodalmer Account, located at the Banco Bilbao Vizcaya Bank;

(iii)      In furtherance of a scheme to defraud, and with specific intent to defraud, on November 25, 1996, Gonzalez contacted Ezrique

4

and/or Blue Belt via facsimile to request that Ezrique check to see if there was a mistake in the amount of the November 22, 1996 wire-transfer as Gonzalez was expecting more than $14,000;

(iv)    In furtherance of a scheme to defraud, and with specific intent to defraud, on December 9, 1996, Gonzalez contacted Ezrique via facsimile requesting $20,000, which was an upfront payment for fraudulent contracts and documents which Gonzalez intended to provide to Ezrique and/or Blue Belt in the future;

(v)    In furtherance of a scheme to defraud, and with specific intent to defraud, on December 16, 1996, Gonzalez contacted Ezrique via facsimile to follow up on his initial request for $20,000;

(vi)    In furtherance of a scheme to defraud, and with specific intent to defraud, on December 20, 1996, Gonzalez contacted Ezrique via facsimile to follow up on his initial request for $20,000;

(vii)    In furtherance of a scheme to defraud, and with specific intent to defraud, on January 17, 1997, Gonzalez transmitted, via facsimile, a draft amendment letter purporting to provide guarantees for Ezrique and Blue Belt on behalf of WWE with respect to an upcoming WWE tour in Kuwait;

(viii)    In furtherance of a scheme to defraud, and with specific intent to defraud, on January 17, 1997, Gonzalez transmitted, via facsimile, a revised draft amendment letter purporting to provide guarantees for Ezrique and Blue Belt on behalf of WWE with respect to an upcoming WWE tour in Kuwait;

(ix)    In furtherance of a scheme to defraud, and with specific intent to defraud, on January 20, 1997, Gonzalez contacted Ezrique via facsimile and asked if Ezrique had made the transfer as they "had previously discussed";

(x)    In furtherance of a scheme to defraud, and with specific intent to defraud, on or about January 22, 1997, Ezrique and/or Blue Belt wire-transferred $9,984 to Gonzalez through the Eurodalmer Account;

(xi)    In furtherance of a scheme to defraud, and with specific intent to defraud, on January 23, 1997, Eurodalmer wire-transferred $2,775 of monies obtained from Ezrique to Gonzalez at the LWI Account, located at the Chase Manhattan Bank;

(xii)    In furtherance of a scheme to defraud, and with specific intent to defraud, on January 23, 1997, Gonzalez contacted Ezrique, via facsimile, to inquire as to when Gonzalez could expect to receive

the balance of the $20,000 that Gonzalez expected to receive in exchange for providing the fraudulent amendment letter;

(xiii)   In furtherance of a scheme to defraud, and with specific intent to defraud, on or about March 31, 1997, Ezrique and/or Blue Belt wire-transferred $9,985 to Gonzalez through the Eurodalmer Account;

(xiv)   As a reasonably foreseeable result of the Defendants' fraudulent scheme, on June 8, 1999, Ezrique and/or Blue Belt transmitted, via facsimile, to WWE's legal department, two backdated fraudulent contracts created by Gonzalez: (i) the June 12, 1996 Amendment to Exclusive Agreements; and (ii) the June 12, 1996 Amendment to Settlement Agreement of October 28, 1994;

(xv)   In furtherance of a scheme to defraud, and with specific intent to defraud, on March 21, 2002, Ezrique and/or Blue Belt wire-transferred $10,000 to Gonzalez through the LWI Account;

(xvi)   In furtherance of a scheme to defraud, and with specific intent to defraud, on April 22, 2002, Ezrique and/or Blue Belt wire-transferred $5,000 to Gonzalez through the LWI Account;

(xvii)   In furtherance of a scheme to defraud, and with specific intent to defraud, on or about May 20, 2002, Gonzalez transmitted via mail or facsimile the backdated, fraudulent August 12, 1996 Amendment to Ezrique and/or Blue Belt;

(xviii)   In furtherance of a scheme to defraud, and with specific intent to defraud, on or about October 14, 2002, Gonzalez transmitted via mail or facsimile the false Gonzalez Affidavit to Ezrique and/or Blue Belt;

(xix)   As a reasonably foreseeable result of the Defendants' fraudulent scheme, on January 23, 2003, Ezrique and/or Blue Belt transmitted, via facsimile, legal "Warnings" which relied on the backdated August 12, 1996 Amendment and the false Gonzalez Affidavit, threatening WWE with legal action as a result of WWE's legitimate contractual relationship with Sanjay Video;

(xx)   As a reasonably foreseeable result of the Defendants' fraudulent scheme, on January 23, 2003, Transworld Television transmitted, via facsimile, to WWE, copies of the following documents Transworld received from one of its distributors in Dubai: (i) a letter from Blue Belt's attorney, Backer A. Ayyad, which claimed that Blue Belt was the WWE "right holder" in the Middle East and threatened legal action if Transworld's distributor continued to distribute WWE programs in the Middle East; and (ii) a copy of

Gonzalez's fraudulent Affidavit, which was attached to the Ayyad letter;

(xxi)   As a reasonably foreseeable result of the Defendants' fraudulent scheme, on January 24, 2003, Blue Belt transmitted to Adnan Al Raisi Video, via facsimile, legal "Warnings" which relied on the backdated August 12, 1996 Amendment and the false Gonzalez Affidavit. The "Warnings" warned Al Raisi that Blue Belt was the sole exclusive agent for the distribution of WWE home videos in the Middle East;

(xxii)   As a reasonably foreseeable result of the Defendants' fraudulent scheme, on April 21, 2003, Blue Belt and Ezrique, through their attorney, Ayyad, mailed a letter to Adnan Al Raisi Video, demanding that Al Raisi stop distributing WWE home videos and remit $60,000 to Blue Belt, or face legal action from Blue Belt;

(xxiii)   As a reasonably foreseeable result of the Defendants' fraudulent scheme, on or about May 23, 2003, Ezrique and/or Blue Belt, through their new attorneys, Middle Eastern Global Advocates and Legal Consultants, mailed to WWE new "Warnings" which also relied on the August 12, 1996 Amendment and the false Gonzalez Affidavit. The new "Warnings" claimed that Blue Belt was the only authorized distributor of WWE home videos in the Middle East, and that WWE's appointment of Sanjay Video as a licensee was in violation of the provisions of the Commercial and Brokers Law;

(xxiv)   In furtherance of a scheme to defraud, and with specific intent to defraud, on May 21, 2004, Ezrique and/or Blue Belt wire-transferred $2,500 to Gonzalez through the LWI Account; and

(xxv)   As a reasonably foreseeable result of the Defendants' fraudulent scheme, on August 27, 2004, Gonzalez's attorney, Jason Kuselias, mailed to WWE's counsel Gonzalez's responses to WWE's First Set of Interrogatories. Gonzalez gave false sworn statements to this Court in his responses to WWE's First Set of Interrogatories, including, *inter alia*, that he supposedly (i) did not "seek or receive any payments from Blue Belt and/or Ezrique;" (ii) did not receive any payments from Blue Belt and/or Ezrique; and (iii) did not sign documents purporting to give Blue Belt and/or Ezrique rights from WWE after his termination by WWE. Such false sworn statements were transmitted or facilitated by mail and Gonzalez knew or should have known such false sworn statements would be transmitted or facilitated by mail.

b.  In violation of the Federal Money Laundering Statutes, 18 U.S.C. §§ 1956 and 1957, the Defendants' solicitation and receipt of payments in exchange for Gonzalez providing fraudulent, backdated contracts to Ezrique and/or Blue Belt, involved proceeds of mail and wire fraud, enumerated unlawful activities under 18 U.S.C. § 1956, and were designed to conceal the nature and source of such unlawful activity.  In addition, or in the alternative, the Defendants' receipt of unlawful payments involved the deposit, withdrawal, transfer or exchange of funds to a financial institution of a value in excess of $10,000 and represented the proceeds of mail and/or wire fraud, enumerated unlawful activities under 18 U.S.C. § 1957.  The Defendants' specific acts of money laundering in violation of 18 U.S.C. §§ 1956 and 1957 include at least the following:

(i)  In furtherance of a scheme to defraud, and with specific intent to defraud, on or about November 22, 1996, Ezrique and/or Blue Belt wire-transferred $14,000 to Gonzalez at the Eurodalmer Account, located at the Banco Bilbao Vizcaya Bank;

(ii)  In furtherance of a scheme to defraud, and with specific intent to defraud, on January 22, 1997, Ezrique and/or Blue Belt wire-transferred $9,984 to Gonzalez through the Eurodalmer Account;

(iii)  In furtherance of a scheme to defraud, and with specific intent to defraud, on January 23, 1997, Eurodalmer wire-transferred $2,775 to Gonzalez at the LWI Account;

(iv)  In furtherance of a scheme to defraud, and with specific intent to defraud, on March 31, 1997, Ezrique and/or Blue Belt wire-transferred $9,985 to Gonzalez through the Eurodalmer Account;

(v)  In furtherance of a scheme to defraud, and with specific intent to defraud, on March 21, 2002, Ezrique and/or Blue Belt wire-transferred $10,000 to Gonzalez through the LWI Account;

(vi)  In furtherance of a scheme to defraud, and with specific intent to defraud, on April 22, 2002, Ezrique and/or Blue Belt wire-transferred $5,000 to Gonzalez through the LWI Account; and

(vii)  In furtherance of a scheme to defraud, and with specific intent to defraud, on May 21, 2004, Ezrique and/or Blue

Belt wire-transferred $2,500 to Gonzalez through the LWI Account.

c.  Aware of the pending judicial proceeding between WWE and Gonzalez, in violation of 18 U.S.C. § 1503, Gonzalez endeavored to corruptly influence the due administration of justice by providing patently false responses to WWE's First Set of Interrogatories. Specifically, Gonzalez gave false sworn statements to this Court, including, *inter alia,* that he supposedly (i) did not "seek or receive any payments from Blue Belt and/or Ezrique;" (ii) did not receive any payments from Blue Belt and/or Ezrique; and (iii) did not sign documents purporting to give Blue Belt and/or Ezrique rights from WWE after his termination by WWE.

d.  Gonzalez's creation and/or execution of forged and/or falsified contracts purporting to grant Ezrique and Blue Belt WWE licensing rights, combined with Gonzalez's false Affidavit, which was intended to deceive third-parties as to the authenticity of the fraudulent contracts, materially contributed to, facilitated and enabled Ezrique and/or Blue Belt's piracy and unauthorized production, sale and trafficking of counterfeit WWE home video products in violation of The National Stolen Property Act, 18 U.S.C. § 2318 and 18 U.S.C. § 2320.

e.  In violation of the Federal Travel Act, 18 U.S.C. § 1952, the Defendants' scheme to defraud WWE of its valuable licensing rights by providing backdated fraudulent contracts to Ezrique and Blue Belt, in exchange for unlawful payments—payments which were designed to conceal the true nature and source of the payments, involved the unlawful use of the mail or a facility of interstate commerce with the intent to distribute the proceeds of money laundering—enumerated unlawful acts under 18 U.S.C. § 1952. Thereafter, the Defendants committed acts in furtherance of the scheme, including, but not limited to, soliciting and receiving payments from Ezrique and/or Blue Belt, creating the false Gonzalez Affidavit and submitting false interrogatory responses. Each of the specific acts identified above in violation of the Federal Mail and Wire Fraud Statutes, 18 U.S.C. §§ 1341 & 1343; the Federal Money Laundering Statutes, 18 U.S.C. §§ 1956 and 1957, and the National Stolen Property Act, 18 U.S.C. §§ 2318 and 2320, also constitute separate violations of the Federal Travel Act, and therefore, such allegations are incorporated herein by reference and reasserted as though fully set forth at length.

**(d)**  There has not yet been a criminal conviction for the predicate acts.

(e)    WWE's previously-filed lawsuit in this Court against Blue Belt and Ezrique captioned *World Wrestling Entertainment, Inc. v. Blue Belt Trading Co. and Adnan Ahmed Ali Ezrique*, No. 3:03 CV 0271 (GLG), resulted in entry of a judgment by default regarding certain of the conduct underlying the predicate acts alleged in WWE's Second Amended Complaint.

(f, g)   The foregoing predicate form a pattern of racketeering activity, which began in or around 1996 and continue through the filing of WWE's Second Amended Complaint, in that they are part of a common scheme or plan to defraud WWE of its valuable licensing rights and to harm WWE's business activities in the Middle East through the enterprise or enterprises described in WWE's Second Amended Complaint.  Specifically, in exchange for payments from Blue Belt and/or Ezrique, Defendant Gonzalez falsified documents and misrepresented the licensing rights granted by WWE to Blue Belt and Ezrique.  Armed with the fraudulent documents, Blue and Ezrique have improperly exploited and continue to improperly exploit WWE licensing rights in the Middle East while coercing Middle Eastern governments and local businesses not to allow WWE's duly authorized agent to conduct business.

6.    *A detailed description of the alleged enterprise for each RICO claim, which shall include:*

a.    *The names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;*

b.    *The structure, purpose, function and course of conduct of the enterprise;*

c.    *Whether any defendants are employees, officers or directors of the alleged enterprise;*

d.    *Whether any defendants are associated with the alleged enterprise;*

e.    *Whether plaintiff contends that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and*

f.      *If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.*

Defendants, Ezrique and Blue Belt, acting in concert, comprised an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) through the pattern of racketeering activity as set forth in detail in Paragraph 5 above for the purpose of defrauding WWE of its valuable licensing rights and harming WWE's business activities in the Middle East.  The Defendants are associated with and participated in the management and direction of the enterprise, however, the Defendants are individuals or entities separate from the alleged enterprise.

7.      *Whether plaintiff contends that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.*

The pattern of racketeering activity is separate from the association-in-fact enterprise.

8.      *The alleged relationship between the activities of the enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the enterprise.*

On information and belief, the Defendants, in association with Ezrique and Blue Belt, conduct various activities for the mutual benefit of the Defendants, Ezrique and Blue Belt, certain of which are separate from and unrelated to the unlawful activities described in WWE's Second Amended Complaint.  In addition and/or in the alternative, the association-in-fact enterprise comprised of the Defendants, Ezrique and Blue Belt furnishes a vehicle for, and oversees and coordinates the commission of, the predicate acts alleged in WWE's Second Amended Complaint.

9.      *The benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.*

As a direct and proximate result of Defendants' pattern of racketeering, the enterprise has been benefited by its exploitation of WWE licensing rights, including, but not limited to, the

distribution of WWE home video products, to which it is not entitled and by its receipt of other illegal, un-bargained for and quantifiable financial benefits.

10.     *The effect of the activities of the enterprise on interstate or foreign commerce.*

The activities of the association-in-fact enterprise of the Defendants, Ezrique and Blue Belt affect foreign and interstate commerce in various ways, including, but not limited to, (i) the transfer of fraudulently obtained funds internationally; (ii) the use of international mail and wire; and (iii) international travel.

11.     *If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:*

a.     *The identity of the individual(s) who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and*

b.     *The use or investment of such income.*

Not applicable.

12.     *If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.*

Not applicable.

13.     *If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information:*

a.     *The individuals who are employed by or associated with the enterprise; and*

b.     *Whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).*

Not Applicable.

14.     *If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.*

The Defendants, along with Ezrique and Blue Belt, formed a conspiracy for the purpose of achieving and profiting from the racketeering activities described in WWE's Second

Amended Complaint.  Specifically, in exchange for payments from Blue Belt and/or Ezrique, through the bank accounts of Defendant LWI and Defendant Eurodalmer, Defendant Gonzalez falsified documents and misrepresented the licensing rights granted by WWE to Blue Belt and Ezrique.  Armed with the falsified documents, Blue and Ezrique have improperly exploited and continue to improperly exploit WWE licensing rights in the Middle East while coercing Middle Eastern governments and local businesses not to allow WWE's duly authorized agent to conduct business.

15.    *The alleged injury to business or property.*

As a direct and proximate result of Defendants' pattern of racketeering activity as described in WWE's Second Amended Complaint, WWE has suffered injury to its business or property by, *inter alia,* (i) loss of control over its valuable licensing rights; (ii) lost revenues from the sale of WWE home videos in the Middle East; (iii) loss of various third-party business relationships; (iv) substantial litigation expenses necessitated to attempt to enforce WWE's legal rights; and (v) injury to its business, reputation and goodwill.

16.    *The direct casual relationship between the alleged injury and the violation of the RICO statute.*

WWE's injury to its business and property, as described in Paragraph 15 above, is directly attributable to and the consequence of the racketeering activity described in WWE's Second Amended Complaint.

17.    *The damages sustained for which each defendant is allegedly liable.*

The specific amounts of damages will be established through discovery.

18.    *A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.*

None.

19.    *A description of all pendent state claims alleged in the complaint, if any.*

State law claims alleged in WWE's Amended Complaint include: (i) forgery under Connecticut common law and Conn. Gen. Stat. § 52-565; (ii) fraud; (iii) violation of the

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110b et seq.; (iv) tortious

interference with contractual relations; (v) tortious interference with business expectancies; (vi)

fraudulent misrepresentation; (vii) conspiracy; (viii) breach of contract; (ix) breach of fiduciary

duty; and (x) alter ego.

20.     *Any additional information plaintiff feels would be helpful to the Court in*

*processing the RICO claim.*

None.

PLAINTIFF, WORLD WRESTLING
ENTERTAINMENT, INC.


By:     _____
        Stanley A. Twardy, Jr. (ct05096)
        Terence J. Gallagher (ct22415)
        DAY, BERRY & HOWARD LLP
        One Canterbury Green
        Stamford, CT  06901-2047
        (203) 977-7300 (phone)
        (203) 977-7301 (fax)

        and

        Jerry S. McDevitt, Esq.
        Jason L. Richey, Esq.
        Amy L. Barrette, Esq.
        KIRKPATRICK & LOCKHART NICHOLSON
        GRAHAM LLP
        Henry W. Oliver Building
        535 Smithfield Street
        Pittsburgh, PA  15222

        Its attorneys.

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that a copy of the foregoing was sent via first-class mail, postage

prepaid, on this 28th day of March, 2005 to:


| Ausbert de Arce | Ausbert de Arce | Ausbert de Arce |
| --- | --- | --- |
| 601 West 26th Street, 18th Floor | 604 East 9th Street | 1202 Lexington Avenue |
| New York, NY 10001 | New York, NY 10009 | New York, NY 10028 |



                                  _____

                                    Terence J. Gallagher